IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SELLERS CAPITAL, LLC, and<br>SELLERS CAPITAL MASTER<br>FUND, LTD.<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE WIGHT, ARMADA<br>GROUP, GP, INC. and ARMADA<br>ENTERPRISES, INC.<br><br>Defendants. | Case No. 15-cv-07644<br><br><br><br><br>Hon. Jorge L. Alonso<br><br><br>Mag. Judge Jeffrey T. Gilbert |

**PLAINTIFFS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY**

In response to Plaintiffs Sellers Capital, LLC and Sellers Capital Master Fund, Ltd.'s Motion to Compel Discovery, Dkt. 31, Defendants George Wight ("Wight"), Armada Enterprises, Inc. ("AE"), and Armada Group, GP, Inc. ("AG") do not rebut any of Plaintiffs' facts and concede that a number of their objections to Plaintiffs' Discovery Requests are baseless. In support of their remaining objections, Defendants make two arguments: (1) Plaintiffs' veil-piercing claims are "insufficient," *see* Dkt. 38 ("Defs. Resp.") ¶ 1; and (2) Veil-piercing discovery should be limited to events directly connected to the Agreement that is the subject of this litigation, and limited in time. *See* Defs. Resp., *passim*. As shown below, neither argument has merit.

**I.      DEFENDANTS HAVE DROPPED CERTAIN OBJECTIONS.**

In response to Plaintiffs' motion to compel, Defendant Wight has dropped his

objections to Plaintiffs' Document Request Nos. 23, 26, and 30. *See* Defs. Resp. ¶ 13. Wight has therefore conceded that his lines of credit (Request No. 23), tax returns (Request No. 26), and inheritance (Request No. 30) are proper subjects for discovery and that his objections were not substantially justified. Plaintiffs have no objection to Wight's request for fourteen days to produce documents responsive to these requests and to amend his Discovery Responses accordingly.

## II. PLAINTIFFS' VEIL-PIERCING ALLEGATIONS ARE MORE THAN SUFFICIENT TO SUPPORT THE REQUESTED DISCOVERY.

Defendants, in conclusory fashion, declare that Plaintiffs' veil-piercing allegations cannot support Plaintiffs' Discovery Requests. *See, e.g.,* Defs. Resp. ¶¶ 1, 7, 11. Under Florida law, in order to pierce the corporate veil, a litigant must establish that the corporation in question (1) was a "mere instrumentality" of the parent corporation (or controlling individual); and (2) was "organized or used by the parent to mislead creditors or to perpetrate a fraud upon them." *USP Real Estate Inv. Trust v. Discount Auto Parts, Inc.*, 570 So. 2d 386, 390 (Fla. Dist. Ct. App. 1990) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984)).[1] Plaintiffs have sufficiently alleged both elements, and their Discovery Requests are directly related to each of them.

### A. The Discovery Requests are aimed at showing that AE and AG are "mere instrumentalities" of Wight.

Defendants argue that Plaintiffs "cannot offer any proof" in support of their

---

[1] Defendants do not dispute that Florida law governs the veil-piercing analysis in this case. *See* Dkt. 33 at 8 n.3 (PageID #292).

2

argument that AE and AG were mere instrumentalities of Wight. Defs. Resp. ¶ 7. This is an obviously incorrect standard; no such "proof" is required in support of a motion to compel. Defendants are, in effect, demanding that Plaintiffs provide proof of the facts whose discovery Defendants are resisting.

Plaintiffs' allegations and the limited discovery obtained to-date strongly support the conclusion that AE and AG were Wight's instrumentalities.[2] In particular:

- AG admits that it was formed in 2014 and never issued any stock. *See* Defs. Answer to Second Amended Compl., Dkt. 39, at ¶¶ 54-56; Dkt. 33-2 at PageID #489-90 ¶ 30.

- AE and AG never filed tax returns. *See* Dkt. 33-2 at PageID #499 ¶ 24; *id.* at PageID #488 ¶ 24.

- AE and AG had no assets at the time of the Agreement. *See id.* at PageID #499 ¶ 22; PageID #488 ¶ 22.

- AE and AG did not have bank accounts. *See id.* at PageID #498 ¶ 19; PageID #487 ¶ 19; PageID #468 ¶ 1; PageID #465 ¶ 1.

- AE and AG were not capitalized at the time of the Agreement or when Defendants subsequently breached the Agreement. *See id.* at PageID #498-500 ¶¶ 20, 21, 25, 26; PageID #487-89 ¶¶ 20, 21, 25, 26; PageID #470-71 ¶ 8; PageID #467 ¶ 7.

- AE and AG did not have bylaws. *See id.* at PageID #501 ¶ 31; PageID #490 ¶ 31.

- AE and AG did not pass any corporate resolutions. *See id.* at PageID #501 ¶ 32; PageID #490 ¶ 32.

- AE and AG did not hold any corporate annual meetings. *See id.* at PageID

---

[2] True and correct copies of Plaintiffs' Discovery Requests and Defendants' Discovery Responses are attached as exhibits to Plaintiffs' Certificate of Compliance with Local Rule 37.2 filed in Support of Plaintiffs' Motion to Compel Discovery, Dkt. 33-2.

#501 ¶ 33; PageID #490 ¶ 33.

- AE and AG did not hold any board of director meetings or committee meetings. *See id.* at PageID #501 ¶ 34; PageID #490 ¶ 34.

These are the facts that Defendants call "insufficient" to support discovery relating to whether AE and AG were Wight's instrumentalities. On the contrary, at this stage of the case, the known facts strongly support discovery into the identity of interest between and among AE, AG, and Wight. *See USP Real Estate Inv. Trust*, 570 So. 2d at 389 (finding relevant that sham corporation had no distinct officers, had no bank accounts, never filed tax returns, and generally did not conduct any business of its own); *XL Vision, L.L.C. v. Holloway*, 856 So. 2d 1063, 1066 (Fla. Dist. Ct. App. 2003) (veil piercing allegations found plausible where they included allegations that defendants "commingled funds" and "failed to maintain other corporate formalities"). Plaintiffs' Discovery Requests are aimed directly at fleshing out the data points listed above, in particular as to Wight individually and Wight's other companies, about which almost no discovery has been provided.[3]

**B.    The Discovery Requests are relevant to whether Wight used AE and AG to perpetrate a fraud.**

On this element, Defendants take issue with Plaintiffs' characterization of AG as an "insulating entity" for Wight. *See* Defs. Resp. ¶¶ 7-11. But the "insulating entity" characterization is illustrative only; the test under Florida law is whether

---

[3] Contrary to Defendants' assertion, *see* Defs. Resp. ¶ 11, Plaintiffs' veil-piercing allegations are far more substantial than those on which similar discovery was permitted in *Elipas v. Jedynak*, No. 07 C 3026, 2008 U.S. Dist. LEXIS 122898, *16 (N.D. Ill. Oct. 3, 2008) (permitting discovery of defendants' financial information based on conclusory alter ego allegation).

4

the corporation was used "to accomplish some fraud or illegal purpose." *USP Real Estate Inv. Trust*, 570 So. 2d at 391. Being an insulating entity is one way a corporation could be used illicitly, but it is not the only way. In any event, the facts presently known to Plaintiffs suggest that AG was an insulating entity for Wight and also was otherwise used to perpetrate a fraud against Plaintiffs.

### 1. Defendants' financial information is relevant to whether the Agreement was fraudulently induced and breached.

AG's role as insulation for Wight is obvious: Wight caused AG to sign the Agreement with Plaintiffs, which included the representation that AG had $16.2 million "cash on hand" to close the transaction. Having AG sign the Agreement was Wight's attempt to insulate himself from liability in the event of a breach. Wight was able to use AG this way because AG — with no assets, directors, capitalization, bylaws, resolutions, bank accounts, or tax returns — was his to abuse.

In support of their argument that Wight used AG to perpetrate a fraud, Plaintiffs have alleged that Wight's representation in the Agreement that AG had $16.2 million "cash on hand" was an intentional misrepresentation and a false statement of fact designed to induce them into signing the Agreement.[4] Wight may try to defend against this allegation by showing that he or an entity he controlled in

---

[4] Documents obtained from City National Bank ("CNB"), which Defendants ignore in their Response, support this allegation. These documents show that Wight asked CNB for a "[s]ecured stock loan of $20 million" on the same day he signed the Agreement; and told CNB a week before the closing that "[w]e require $20 million to close." *See* Dkt. 33-1 at PageID #339, 341.

5

fact had $16.2 million in cash, and therefore that his representation in the Agreement was truthful.[5] In order to prosecute their veil-piercing claim and to counter this defense, Plaintiffs have sought discovery into Defendants' financial information, including the financial information of any entity controlled by Wight. *See* Dkt. 33 at 4-5 (PageID #288-89). Plaintiffs seek to discover whether Wight or any of his other companies had $16.2 million in cash when Wight signed and breached the Agreement. This information goes directly to whether Wight used AG to defraud Plaintiffs.

Wight's misuse of AG to sign and then breach the Agreement mirrors the abuse of the corporate form in *USP Real Estate Investment Trust*, 570 So. 2d at 390. In that case, a commercial tenant had its lease assigned to a different corporation's subsidiary as part of a merger. *Id*. at 387. Following the merger, the subsidiary abandoned the property, causing the landlord to seek damages for breach of the lease from both it and its parent. *Id*. at 389. The appellate court pierced the veil and held the parent liable on the subsidiary's lease, noting that the subsidiary was created "for the sole purpose of holding a shopping center lease" and that following the breach, "there was no responsible party to pay rents for the balance of the lease[.]" *Id*. at 390. Wight used AG in exactly the same way with regard to the Agreement.

---

[5] In their Second Amended Complaint, Plaintiffs alleged this representation was false. In their Answer, Defendants denied it. *See* Dkt. 39 ¶ 51.

6

**2. In arguing that AE and AG were not used to perpetrate a fraud, Defendants admit their financial information is relevant.**

Defendants argue that "Armada's [then-] current portfolio of salvage and media assets" show that AE and AG were not shams. *See* Defs. Resp. ¶ 9. Plaintiffs, anticipating this defense, asked Defendants to produce all documents relating to their assets at the time of the Agreement. Wight objected to these requests in full; AE and AG responded that they had no assets. *See* Dkt. 33-2 at PageID #478, 488, 499.

To the extent Wight now argues that Defendants' assets are relevant to defend against Plaintiffs' veil-piercing claims, he has conceded the relevance of Plaintiffs' Discovery Requests and should drop his objections. Even worse, by asserting that they had a "portfolio of salvage and media assets" at the time of the Agreement, AE and AG have blatantly contradicted their Discovery Responses, in which they claim to have no assets at all.[6] For all three Defendants, documents relating to their assets and financial condition are plainly relevant to their defense against Plaintiffs' veil-piercing claim. All objections to their production should be overruled, and Defendants should be ordered to amend their Discovery Responses and produce all documents relating to their alleged "portfolio of salvage and media

---

[6] Wight took a similar position in response to Plaintiffs' Interrogatory No. 1, which asked him to identify all of his bank accounts, and all bank accounts of entities he controls. *See* Dkt. 33-2 at PageID #462. Wight answered that there were (and are) no such accounts, and has stood by this answer. *See id.*; Defs. Resp. ¶ 12. AE and AG's assertion that they had a "portfolio of salvage and media assets" strongly undermines Wight's blanket denial, which should be amended accordingly.

7

assets," as well as any other assets.

The other facts highlighted by Defendants in their Response, *see* Defs. Resp. ¶¶ 7-11, are irrelevant. That AE may have "several subsidiaries or affiliates," *see id.* ¶ 9, does not make up for a lack of formalities or automatically make it and AG legitimate corporations. Defendants also argue that AG's capitalization "was not completed given the purchase [of Plaintiffs' Premier stock] fell through." *Id.* ¶ 10. This is exactly backwards: AG promised in the Agreement that it already had "sufficient cash on hand to enable [it] to make payment of the Purchase Price." Dkt. 30-1 at Sec. 4.4 (PageID #268). The purchase fell through because this was untrue, and because AG then breached the Agreement.[7]

### III. DEFENDANTS' PROPOSED TIME AND SCOPE LIMITATIONS WOULD EXCLUDE RELEVANT INFORMATION.

Defendants ask that discovery relating to transfers, assets, and loans made to AE or AG be limited to November 2014 or earlier, and also limited to transfers and financial information specifically related to the Agreement. *See* Defs. Resp. ¶¶ 3, 4, 6, 12, 14, 15. As shown above, Plaintiffs have more than plausibly alleged that AE

---

[7] Defendants also argue that AG had a legitimate purpose as a merger vehicle, *see* Defs. Resp. ¶ 10, but this is pure speculation, as AG has provided no evidence that any of the mergers discussed in the quoted press release ever happened, and the document attached to Defendants' Response refers to what Armada "will create," not what existed. *See id.* ¶ 9. Further, the document Defendants call "a listing of companies that were to be included" in their contemplated future Armada conglomerate, *see id.* ¶ 8, is the same indecipherable document Wight gave to CNB when he was trying to secure a loan in 2014. CNB's representative called it "a bunch of #s that don't make any sense to me without context." *Compare* Dkt. 33-1 at PageID #319-28 *with* Dkt. 38-1 at PageID #523-32; *see also* Dkt. 33-1 at PageID #336.

and AG's veils should be pierced. These allegations put at issue AE, AG, and Wight's financial information from January 1, 2014 (when the parties first began negotiating) to the present. If, for example, Wight, AE, and AG commingled funds, that fact would be relevant, even if the commingling was superficially or temporally unrelated to the Agreement. If Wight caused large transfers or loans to be made to or from AE or AG before the Agreement was signed or after it was breached, then such transfers would be relevant to showing the identity of interest between and among Wight, AE, and AG. Lastly, Defendants' current financial information is relevant to Plaintiffs' claim for punitive damages. *See Fieldturf Int'l, Inc. v. Triexe Mgmt. Grp. Inc.*, No. 03 C 3512, 2004 U.S. Dist. LEXIS 6676, *6-7 (N.D. Ill. Apr. 14, 2004) ("When punitive damages are sought, a party's financial condition is at issue and discovery on that subject is relevant.").

For all of these reasons, Plaintiffs' Discovery Requests, with a discovery period running from January 1, 2014 to the present, are "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Defendants' proposed time and subject-matter limits would improperly exclude relevant documents and information from discovery.[8]

---

[8] The time period Defendants discuss in Paragraph 4 of their Response (relating to Document Request No. 23 to each) is addressed in Plaintiffs' opening memorandum at page 12 n.7 (Dkt. 33, PageID #296). Plaintiffs' original Request No. 23 contained a typo as to the year, which Plaintiffs have acknowledged and corrected, both in their opening memorandum and by serving amended requests on Defendants. Defendants' argument in Paragraph 4 of their Response is not based on the correct (and corrected) time period.

## IV. DEFENDANTS' VAGUENESS OBJECTIONS REMAIN UNJUSTIFIED.

Defendants argue that the phrase "access to cash" and "infusion of capital" in the Discovery Requests are objectionably vague, and assert that Plaintiffs failed to properly address these terms in their meet-and-confer conference with Defendants. *See* Defs. Resp. ¶¶ 4, 5.

Defendants did not identify these specific phrases as vague or ambiguous in their initial Discovery Responses, s*ee* Dkt. 33-2, Ex. B, and therefore Plaintiffs could not have possibly raised them in the meet-and-confer. Rather, AE and AG (but not Wight) added objections to these phrases in their Amended Discovery Responses, without explanation or justification. *See* Dkt. 33-2, Ex. E. They have not elaborated at all on these objections in their Response. As shown in Plaintiffs' opening memorandum, these objections are baseless and should be overruled. *See* Dkt. 33 at 12-13 (PageID #296-97).

## V. DEFENDANTS HAVE NO BASIS TO AVOID PAYMENT OF ATTORNEYS' FEES.

Defendants argue that Plaintiffs were "premature" in filing their motion to compel, and therefore an award of fees would be inappropriate. *See* Defs. Resp. ¶ 16. To the extent Defendants are invoking Fed. R. Civ. P. 37(a)(5)(A)(i)'s exception to the automatic award of attorneys' fees, their argument fails. *See Menendez v. Wal-Mart Stores East L.P.*, No. 1:10-CV-00053, 2012 U.S. Dist. LEXIS 81710, *8 (N.D. Ind. June 13, 2012) (Rule 37(a)(5)(A)(i) does not apply where non-moving party expressly invites motion to compel). Here, Plaintiffs filed their motion to compel following a lengthy meet-and-confer conversation, and following an exchange of

10

correspondence that ended with Defendants' declaration that they were standing on certain objections. *See* Dkt. 33-2, Ex. F. Plaintiffs filed their motion less than two months before the close of discovery, fully complied with Local Rule 37.2, and acted in good faith to obtain the disputed discovery without court action.[9] Defendants, by explicitly declaring that they stand on their objections, invited Plaintiffs' motion to compel. Rule 37(a)(5)(A)(i) provides them no refuge.

Defendants offer no other reason why fees should not be awarded automatically, and thus have not met their burden to show that one of Fed. R. Civ. P. 37(a)(5)(A)'s other exceptions applies. Indeed, Defendants dropped a number of objections in response to the motion, which shows their lack of substantial justification. *See Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries*, 259 F.R.D. 323, 326-27 (N.D. Ill. 2009) (awarding attorneys' fees under Rule 37 where documents were produced in response to filing of motion to compel). As shown above, the objections Defendants maintained are no more justifiable. Plaintiffs, therefore, are entitled to an "automatic award of fees". *Lorillard*, 259 F.R.D. at 327.

## CONCLUSION

WHEREFORE, Plaintiffs Sellers Capital, LLC and Sellers Capital Master Fund, Ltd. respectfully request that this Court grant their Motion to Compel Discovery, and award Plaintiffs their reasonable fees incurred in bringing this motion.

---

[9] The parties have since agreed to jointly move the Court to extend the discovery cut-off. *See* Dkt. 40.

11

Respectfully Submitted,

**SELLERS CAPITAL, LLC, AND SELLERS CAPITAL MASTER FUND, LTD.**

Dated: May 5, 2016      By:     /s/ Adam N. Hirsch
                                                     One of Their Attorneys

Adam N. Hirsch (Ill. No. 6275127)
Andrew E. Cunningham (Ill. No. 6314441)
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 – Telephone
(312) 663-0303 – Fax
ahirsch@robinsoncurley.com
acunningham@robinsoncurley.com

## **CERTIFICATE OF SERVICE**

I, Andrew E. Cunningham, an attorney, certify that on May 5, 2016, I caused to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the foregoing, using the CM/ECF system, which shall send notice of this filing to all counsel of record.

      /s/ Andrew E. Cunningham
      One of Plaintiffs' Attorneys