IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SELLERS CAPITAL, LLC, and SELLERS CAPITAL MASTER FUND, LTD. | )<br>)<br>)<br>) Case No. 15-cv-07644 |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>)<br>) Judge Jorge L. Alonso |
| GEORGE WIGHT, ARMADA GROUP, GP, INC. and ARMADA ENTERPRISES, INC. | )<br>)<br>)<br>) Mag. Judge Jeffrey T. Gilbert |
| Defendants. | )<br>) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

Defendants George Wight ("Wight"), Armada Enterprises, Inc. ("AE"), and Armada Group GP, Inc. ("AG") have sought leave pursuant to Fed. R. Civ. P. 14(a)(1) to file a Third-Party Complaint against Samuel Weiser ("Weiser"), one of the members of Plaintiff Sellers Capital, LLC ("Sellers Capital"). Leave should be denied because: (1) Defendants' proposed Third-Party Complaint, Dkt. 55-1 ("3PC"), is not a proper request for impleader under Rule 14; (2) the 3PC obviously lacks merit; and (3) the 3PC is a prejudicial and transparent delay tactic.

**BACKGROUND FACTS**

On October 15, 2014, Plaintiffs and AG executed a Share Purchase Agreement ("Agreement"), in which AG agreed to buy from Plaintiffs $16.2 million of the stock of Premier Exhibitions, Inc. ("Premier") at a price of $1.05 per share. *See* Second Amended Complaint ("SAC"), Dkt. 30 ¶ 26. Defendant Wight, who signed the Agreement ostensibly for AG, represented that AG had "sufficient cash

on hand, to enable [it] to make payment of the Purchase Price and consummate" the Agreement. *See* Dkt. 55-1 Ex. A at Sec. 4.4. The parties agreed that the latest possible date for their deal to close would be November 20, 2014. *See id.* at Sec. 2.1.

As that date approached, Wight's counsel, Milan Saha, reassured Plaintiffs that "[w]e are showing up with the money." Dkt. 30 ¶ 36. He also represented that the Defendants "are committed to giving you $1.05 [per share], rather than allow our contract with you to expire." *Id.* ¶ 44. Despite these assurances, and despite Wight's unambiguous representation in the Agreement that AG had sufficient cash to close, when the November 20, 2014 closing date arrived, AG refused to tender payment and instead breached the Agreement. *Id.* ¶ 39.

On August 31, 2015, Plaintiffs filed their initial complaint in this matter, and on March 29, 2016, they filed their SAC. Count I of the SAC alleges that AG breached the Agreement, that Wight, AE, and AG are alter egos of each other, and that AG's corporate veil should be pierced such that Wight should be found liable for AG's breach of the Agreement. *Id.* ¶¶ 49-66. In the alternative, if AG's separate corporate identity is recognized, Count II of the SAC alleges that AE and Wight tortiously interfered with the Agreement by causing AG to breach it. *Id.* ¶¶ 67-76.

Defendants initially appeared and answered on November 17, 2015 and December 14, 2015, respectively. *See* Dkt. 13, 21. No defendant asserted a counterclaim against Plaintiffs or sought to assert a third-party claim against anyone else. *See id.* Now, after more than six months of discovery, Defendants ask for leave to file their 3PC against Weiser.

# ARGUMENT

## I. Defendants' 3PC Is Not A Request For Impleader Under Rule 14.

### A. Rule 14 requires allegations of derivative liability.

Because Defendants seek to file their 3PC more than 14 days after their original answer, they must obtain leave of court. *See* Fed. R. Civ. P. 14(a)(1). Leave to file a third-party complaint may be given if: (1) the proposed third-party action "falls within the general contours limned by Rule 14(a)"; (2) the proposed third-party complaint "does not contravene customary jurisdictional and venue requirements"; and (3) the proposed third-party complaint "will not work unfair prejudice." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 650 (7th Cir. 2002). "The 'general contours' of Rule 14(a) provide that a defendant may file a third-party complaint against, or *implead*, 'a nonparty who is or may be liable to it for all or part of the claim against it.'" *Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12-cv-8309, 2015 U.S. Dist. LEXIS 95919, *13-14 (N.D. Ill. July 23, 2015), *quoting* Fed. R. Civ. P. 14(a)(1).

In other words, a proper third-party complaint is an effort by a defendant to pass to a third party that defendant's liability on the plaintiff's claims. *Id*. at *14 (denying motion for leave under Rule 14). Rule 14's derivative liability requirement is "not altered merely by the fact that the alleged third-party claim grew out of the same transaction" as the underlying complaint. *Temtex Indus. v. TPS Assocs., LLC*, No. 09 C 1379, 2012 U.S. Dist. LEXIS 44911, *3 (N.D. Ill. Mar. 30, 2012) (denying leave under Rule 14 to file non-derivative claim).

3

## B. Defendants' 3PC falls outside the general contours of Rule 14.

Defendants' proposed 3PC is not a proper third-party claim because Defendants do not seek to hold Weiser liable for Sellers Capital's claims against them. Instead, they allege that Defendant AG itself has "suffered damages" as a result of Weiser's actions. *See* Dkt. 55-1 at 6 ¶ 31; *see also* Dkt. 55 at 3 ¶ 10. Defendants request "damages in excess of ten million dollars" in their 3PC, an amount that is not related to the damages Sellers Capital seeks on its claims against them. *Compare* Dkt. 30 ¶ 48 and Dkt. 55-1 at 6. Because Defendants' 3PC does not seek to hold Weiser responsible for Defendants' liability to Sellers Capital, it is not derivative of Plaintiffs' claims against Defendants and therefore falls outside the contours of Fed. R. Civ. P. 14(a)(1). *Marseilles Hydro Power,* 299 F.3d at 650; *see also, e.g., USA Satellite & Cable, Inc. v. Mac Naughton,* No. 15 C 6331, 2016 U.S. Dist. LEXIS 77045, *6-8 (N.D. Ill. June 14, 2016) (dismissing third-party complaint that failed to allege third-party defendant was responsible for plaintiff's losses); *Ashley*, 2015 U.S. Dist. LEXIS 95919 at *14 (third-party complaint failed because it sought damages different from those sought by original plaintiff and therefore was not an attempt to "pass on" liability for plaintiff's claims); *Nuveen Invs. v. Hogan,* No. 00 C 7489, 2002 U.S. Dist. LEXIS 11666, *9 (N.D. Ill. June 26, 2002) (rejecting proposed third-party complaint because it was nothing more than the assertion of "a defense to the original litigation").[1]

---

[1] Defendants' motion for leave does allege that Weiser was "responsible for any alleged breach of the subject contract," *see* Dkt. 55 ¶ 11, but this is an unsupported general allegation belied by Defendants' specific allegations that Weiser caused AG to suffer in excess of $10 million in direct damages.

**II.     Defendants' Proposed 3PC Obviously Lacks Merit.**

Even if Defendants' proposed 3PC is assumed to fall within the contours of Rule 14, leave to file should be denied because the 3PC is facially meritless as a matter of law. *See New Fashion Pork, LLP v. Omni Builders, Inc.*, No. 2:08-cv-67-WTL-WGH, 2008 U.S. Dist. LEXIS 79416, *4, *7 (S.D. Ind. Sept. 30, 2008) (If "the third-party claim obviously lacks merit," leave under Rule 14 should be denied), *quoting* Wright, Miller, & Kane, *Federal Practice and Procedure* § 1443 (2d ed. 1990); *Greene Line Mfg. Corp. v. Fibreboard Corp.*, 130 F.R.D. 397, 400 (N.D. Ind. 1990) (courts should consider "whether the third-party claim has merit" in making leave decisions under Rule 14); *Creek v. Westhaven*, No. 83 C 1851, 1989 U.S. Dist. LEXIS 2657, *3, *15 (N.D. Ill. Mar. 14, 1989) (denying leave to file third-party claim for contribution that was "without merit").

**A.     Tortious interference requires improper interference with someone other than the plaintiff.**

Defendants' 3PC has two counts. Count I is captioned "Intentional Tortious Interference With Contract (Declaratory Judgment – All Defendants/Third-Party Plaintiffs)". Count II is "Intentional Tortious Interference With Contract (Armada Group)". The precise declaratory relief Defendants seek is unclear, as is the difference between Counts I and II. For purposes of this opposition, Plaintiffs have assumed all facts asserted in the 3PC to be true, and have attempted to grapple with all possible reasonable theories of tortious interference asserted within that pleading.

5

"In order to maintain an action for tortious interference with a contractual relationship under Illinois law, a plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach caused by the defendant's conduct; and (5) damages." *IBEW, Local 134 v. Cunningham*, No. 12 C 7487, 2013 U.S. Dist. LEXIS 61083, *17 (N.D. Ill. Apr. 29, 2013), *citing Seip v. Rogers Raw Materials Fund, L.P.*, 948 N.E.2d 628, 638 (Ill. 1st Dist. 2011).

In addition, the interference alleged must be "directed towards a third party who subsequently breaches the contract." *Id.* at *18 (dismissing tortious interference claim). "[T]he acts of defendant aimed at a plaintiff do not constitute inducement." *Id.*, *quoting Block v. Ill. Sec'y of State*, No. 09 C 117, 2010 U.S. Dist. LEXIS 16129, *11 (S.D. Ill. Feb. 24, 2010); *see also McCoy v. Gamesa Tech. Corp.*, 11 C 592, 2012 U.S. Dist. LEXIS 9431, *23 (N.D. Ill. Jan. 26, 2012) ("Tortious interference with a contractual relationship requires an allegation that a defendant [ ] induced a third party [ ] to breach its contract with a plaintiff [ ]."); *Skopp v. First Fed. Sav.*, 545 N.E.2d 356, 361 (Ill. 1st Dist. 1989) ("Inducement to breach a contract involves acts aimed at third parties *other than the plaintiff* which cause those parties to breach a contract held by the plaintiff.") (emphasis added).

This restriction on tortious interference claims makes sense because "to allow a tortious interference claim to proceed based merely on the conduct between the plaintiff and defendant could have the result of dramatically expanding these

6

causes of action, as it would allow a plaintiff to plead tortious interference whenever (as might often be the case) the action by the defendant toward the plaintiff has some 'ripple affect [*sic*]' on third parties." *Premier Transp., LTD. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 U.S. Dist. LEXIS 21803, *7 n.2, *9 (N.D. Ill. Nov. 12, 2002) (dismissing tortious interference claims because complaint failed to allege "that the defendants engaged in any conduct directed towards third parties").[2]

### B. Defendants' first tortious interference theory fails because they allege interference aimed at themselves.

Defendants' first tortious interference claim is that Weiser made "new, distinct demands" of AG relating to the closing of the Agreement, and that "[a]s a direct result of these intentional acts, the purchase as contemplated by the Share Purchase Agreement did not occur." Dkt. 55-1 at 5 ¶¶ 27, 29. Even assuming these

---

[2] One Illinois case, *Scholwin v. Johnson*, 498 N.E.2d 249, 255 (Ill. 2d Dist. 1986), suggests a limited exception to this rule, but that case has been called "an anomaly." *Fresh N' Pure Distribs. v. Foremost Farms USA*, No. 11-C-470, 2011 U.S. Dist. LEXIS 136307, *24 (E.D. Wis. Nov. 28, 2011) (collecting later Illinois cases that disregard *Scholwin*). Even if it weren't, *Scholwin* does not help Defendants. In that case, the court allowed that a tortious interference claim could be based on a situation where "the defendant prevents the plaintiff from performing the contract and, as a result, he is unable to require the third party to perform." *Scholwin*, 498 N.E.2d at 255, *citing* Restatement (Second) of Torts § 766A. But this exception requires the defendant to have made the plaintiff's performance "impossible," not merely "more expensive or burdensome." *Fresh N' Pure Distribs.*, 2011 U.S. Dist. LEXIS 136307 at *23-24. *See also George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330-31 (7th Cir. 1983) ("Our review of Illinois case law reveals no ruling that a cause of action for tortious interference with contract can be stated on the basis of 'adverse impact' or 'hindrance of contract.'"). Defendants here would have to allege that even if they showed up at the closing with $16.2 million in cash, closing the deal with Sellers Capital would have been impossible as a result of Weiser's interference. Defendants did not and cannot make such an allegation.

allegations are true (which they are not[3]), Weiser is alleged to have induced AG (the purported plaintiff for this claim) to breach the Agreement. Under Illinois law, such inducements "aimed at a plaintiff" cannot support a claim for tortious interference as a matter of law. *Cunningham*, 2013 U.S. Dist. LEXIS 61083 at *18. *See McCoy*, 2012 U.S. Dist. LEXIS 9431 at *23 (plaintiff cannot be induced to "breach its own agreement"); *Premier Transp.*, 2002 U.S. Dist. LEXIS 21803, *7 n.2, *9 (requires conduct directed to a third party); *Skopp*, 545 N.E.2d at 361 (same).

### C. Defendants' first tortious interference theory also fails because it does not allege Weiser interfered improperly.

Even if Weiser's actions directed at Defendants prior to the Agreement's closing date could form the basis of a tortious interference claim, Defendants' claim fails as a matter of law for the additional reason that Weiser's actions were not improper. "Importantly, the third element [of tortious interference with contract] requires the plaintiff to show that the defendant's conduct was improper." *House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 U.S. Dist. LEXIS 167887, *27 (N.D. Ill. Dec. 4, 2014), *citing Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 2d Dist. 1998). "Conduct may be improper if it is in violation of statutory provisions or contrary to established public policy. Conduct to promote one's own economic interest is generally not regarded as improper unless it is inherently

---

[3] Most notably, these allegations misconstrue the emails attached to the 3PC. Exhibit B was not a set of "demands," as Defendants allege, but was, in its own words, a list of "a few questions to consider." *See* Dkt. 55-1 at 22. Defendants describe Exhibit C as a threat to not have Defendant's board candidate elected, but in the first paragraph of that email Weiser says, "We anticipate their election on Thursday concurrent with the closing." *See id.* at 25.

8

wrongful." *Id.* (citations omitted).

Here, Defendants allege that Weiser — acting for Premier and not for Sellers Capital — made "new, distinct demands" of Defendants after the Agreement was signed but prior to the closing date, and that Weiser "threatened that Premier would not appoint the three new directors to the board" of Premier, a condition precedent to closing. Dkt. 55-1 at 2 ¶ 5, 5 ¶ 27. Granting Defendants' conclusory premise that Weiser was acting for Premier, and assuming that Defendants' interpretations of Weiser's emails are plausible, Defendants still do not allege that Premier making demands of Defendants was improper. Defendants admit that Premier "was not a signatory to the [Agreement]." *Id.* at 3 ¶ 17. If Premier, acting through Weiser, thought it was in Premier's best business interests to make demands of Defendants or to condition appointments to its board on certain actions by Defendants, such actions could not be improper.[4] Defendants have not and cannot plead facts to the contrary.[5]

Instead, Defendants assert that Weiser's demands on behalf of Premier "fundamentally altered" the Agreement. Dkt. 55 at 2 ¶ 8; *see also* 55-1 at 4 ¶¶ 19-22.

---

[4] If Defendants are allowed to file their 3PC, and if it is not dismissed at the pleading stage, discovery will undisputedly show that Defendants' factual premises and assertions about Premier are inaccurate. Premier was ready, willing, and able to appoint Defendants' three chosen individuals to its board if Defendants had not breached the Agreement.

[5] Defendants' theory is further contradicted by Section 5.1 of the Agreement, which required AG to "use its commercially reasonable efforts" to do "all things necessary, proper, or advisable to consummate and make effective the transactions contemplated by this Agreement." Dkt. 55-1 Ex. A at Sec. 5.1. AG was further obligated to "furnish . . . such information and assistance . . . as may be reasonably requested . . ." *Id.* Weiser's so-called "demand" was allowed by Section 5.1, in particular because it came less than a week before the closing, and AG had not given any indication of its preferred logistics for closing.

But if Weiser was acting for Premier, he would have had no standing to demand that the Agreement be modified. *See* Dkt 55-1 at 3 ¶ 17. If, instead, Weiser was acting for Sellers Capital in making these alleged demands, then (1) the 3PC is not a third-party claim because it is not an attempt to hold a third party liable to Defendants contingent on Defendants being liable to Plaintiffs (*see also* Sec. III.B, *below*); and (2) Weiser's actions could not constitute interference, because he could not have made Defendants' performance impossible. The Agreement could only be modified in writing by mutual consent of both parties, which didn't happen. Dkt. 55-1 Ex. A at Sec. 7.4. Defendants were free to ignore Weiser's so-called "demands" and show up with the money for closing. They did not. Defendants' 3PC has no allegations that show that Weiser's alleged actions were improper interference.

### D. Defendants' second tortious interference theory fails because it is based on post-breach actions.

Defendants' second tortious interference claim is that "Weiser advised Mark Sellers to not provide Armada Group an extension to close the purchase without a substantial forbearance fee, and provided false and misleading information to Mark Sellers as to Armada Group's alleged motives to not close the purchase." Dkt. 55-1 at 5 ¶ 28. As with their first claim, the factual infirmities here are legion, but even assuming the facts as pled are true, the claim fails as a matter of law because it is based on inducements alleged to have occurred *after* AG breached the agreement. It is literally impossible for such inducements to have caused a "subsequent breach" by AG. *Cunningham*, 2013 U.S. Dist. LEXIS 61083 at *17.

To the extent Defendants argue that Sellers Capital's refusal to extend the Agreement was itself a breach of the Agreement, they are also wrong. *See* Dkt. 55-1 Ex. A at Sec. 7.4; *Chicago United Indus. v. City of Chicago*, 669 F.3d 847, 853 (7th Cir. 2012) (refusal to extend contract, even if unreasonable, is not a breach); *Mitchell v. Weiger*, 409 N.E.2d 38, 41 (Ill. 1st Dist. 1980) (tortious interference claim dismissed because "refusal to extend the contract . . . was not a breach").

### III. Defendants' Delay In Filing The 3PC Is Unnecessarily Prejudicial.

In making leave decisions under Rule 14, courts also "must consider Defendants' 'reasons for delay' and whether filing the complaint at this stage would unnecessarily prejudice the parties." *Ashley*, 2015 U.S. Dist. LEXIS 95919 at *16, quoting *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1251 (7th Cir. 1993).

#### A. Defendants have no good reason for their delay.

Defendants have failed to provide a plausible basis for their delay in seeking leave to file their 3PC. Defendants' first tortious interference theory is based on alleged facts of which they must have been contemporaneously aware. *See, e.g.*, Dkt. 55-1 at 2 ¶ 5, 4 ¶¶ 22, 23. They do not even attempt to explain why they delayed raising this claim until now. *See Ashley*, 2015 U.S. Dist. LEXIS 95919 at *17 (denying motion for leave to file third-party complaint where the "facts upon which Defendants based their . . . allegations have been known to Defendants for some time"). Defendants' second theory is based on facts allegedly learned through discovery, but, as shown above, this theory of tortious interference is facially

11

defective because the alleged interference occurred after Defendants breached the Agreement.

### B. Defendants' 3PC is harassing and an improper delay tactic.

Defendants' first tortious interference theory is a barely modified version of their Affirmative Defenses 2 and 3 asserted in their Answer to the SAC. *See* Dkt. 39 at 17. In these affirmative defenses, Defendants allege that Weiser — in this version acting for Sellers Capital — interfered with them in the same way they allege in the 3PC: by making an additional demand of Defendants after the Agreement was signed but prior to the closing date. *Id.* "Affirmative defense" seems to be the proper label for this theory, because it is Defendants' attempt to use Sellers Capital's conduct as an excuse for their breach of the Agreement. Repeating these affirmative defenses in the guise of a third-party claim against Weiser individually could not provide Defendants with any possible additional relief. *See Nuveen Invs.*, 2002 U.S. Dist. LEXIS 11666 at *9. Adding Weiser as a third-party defendant serves only to harass him and to raise the personal cost to him for pursuing Sellers Capital's claims against Defendants.

The 3PC's role as a delaying tactic is obvious. Discovery is well underway, and the only remaining party depositions are those of the principal players: Sellers, Weiser, Wight, and Wight's attorney, Milan Saha. Without the 3PC, discovery should conclude in relatively short order. Defendants have already represented that they wish to hold off on taking any more depositions until their motion for leave is decided. If leave is granted, it will bring months of delay, as Weiser's inevitable

motion to dismiss will have to be briefed and decided, and Weiser will have to be given an opportunity to conduct his own written and oral discovery, potentially including the re-deposing of certain witnesses. This delay would prejudice Plaintiffs' efforts to obtain a timely judgment against Defendants.

## CONCLUSION

Defendants' motion for leave to file a Third-Party Complaint should be denied.

Respectfully Submitted,

**SELLERS CAPITAL, LLC, AND SELLERS CAPITAL MASTER FUND, LTD.**

Dated: August 19, 2016      By:    /s/ Adam N. Hirsch
                                                       One of Their Attorneys

Adam N. Hirsch (Ill. No. 6275127)
Andrew E. Cunningham (Ill. No. 6314441)
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 – Telephone
(312) 663-0303 – Fax
ahirsch@robinsoncurley.com
acunningham@robinsoncurley.com

**CERTIFICATE OF SERVICE**

    I, Adam N. Hirsch, an attorney, certify that on August 19, 2016, I caused to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the foregoing, using the CM/ECF system, which shall send notice of this filing to all counsel of record.


                                                       /s/ Adam N. Hirsch
                                                       One of Plaintiffs' Attorneys