IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELLERS CAPITAL, LLC, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 15 CV 07644 |
| v. | ) | |
| | ) | |
| ARMADA GROUP, GP, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' TRIAL BRIEF**

The Armada Group, GP ("Group"), Inc., Armada Enterprises, Inc. ("Enterprises"), and George Wight ("Wight"), by their attorney, The Agrawal Firm, LLC, submits the following trial brief:

Sellers Capital Master Fund, Ltd. and Sellers Capital, LLC cannot establish that Group breached the Share Purchase Agreement ("Agreement") entered into on October 15, 2014, nor that Wight and Enterprises acted with an improper purpose such that the corporate veil of Group can be pierced, and cannot demonstrate any intentional conduct by Wight and Enterprises to interfere with the Agreement. After all the evidence has been submitted at trial, and given the law as discussed below, this court must rule in favor of Defendants on all counts.

Defendants' frustration of purpose resulting from Samuel Weiser's conduct, Weiser and Mark Sellers' violation of the conflict of laws provision in the Agreement, and Plaintiffs' lack of actual, legal performance of their obligations under the Agreement all defeat any breach of contract claim of Plaintiffs against Group. Furthermore, Plaintiffs Intentional Interference allegations cannot survive given Enterprises' lack of involvement in the Agreement in any

1

fashion and Wight's actual intent to close the deal, not interfere with it. Finally, Plaintiffs failed to properly mitigate their damages; and further, if any damages are awarded, they should be limited by the difference between the purchase amount stated in the Agreement and the value of the shares at the time of the closing date.

Defendants fully stand on all of these arguments and will be presenting them at trial. However, for purposes of this trial brief, Defendants shall focus on the issue of Piercing the Corporate Veil.

**GEORGE WIGHT AND ARMADA ENTERPRISES DID NOT ACT WITH AN IMPROPER PURPOSE AND THEREFORE PLAINTIFFS CANNOT PIERCE THE CORPORATE VEIL**

Plaintiffs cannot demonstrate that Wight and Enterprises acted with an improper purpose, under Florida law, in order to pierce the corporate veil. In Count I of Plaintiffs' Second Amended Complaint, Plaintiffs, in part, allege that Wight and Enterprises used Group's corporate form to mislead and work a fraud upon Plaintiffs. *Plaintiffs' Second Amended Complaint*, Dkt. 30, par. 65. However, under Florida law (the parties have agreed that under Illinois law, the law of the forum state of the corporation for whose veil is being sought to be pierced must be applied--Group was incorporated under the laws of Florida), there is no evidence that Wight or Enterprises acted with this improper purpose.

In *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (1984), the leading Florida case regarding piercing the corporate veil, the Florida Supreme Court held that "the corporate veil may not be pierced absent a showing of improper conduct". *Id*. at 1121. The *Dania* court reviewed a history of cases in determining the proper standard to apply in piercing the corporate veil matters. The court cited to *Riesen v. Maryland Casualty Co*., 14 So. 2d 197 (1943) wherein the court held that ". . . so long as proper use is made of the fiction that a corporation is an entity

apart from its stockholders, the fiction will not be ignored, yet where stockholders enter into a transaction in their individual interest and utilize the corporate name merely to mislead creditors or perpetrate a fraud, the legal entity will be ignored and the stockholders held individually liable." *Id*. at 1118; citing to *Riesen*, 14 So. 2d at 199. The court further cited to *Roberts' Fish Farm v. Spencer*, 153 So. 2d 718 (Fla. 1963) wherein the court held: "Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing the corporate veil." *Id*. at 1121; citing to *Roberts' Fish Farm* at 721. The court drew from these cases to find that a corporate veil may not be pierced absent a showing of improper conduct. *Id*.

The Florida courts, relying on the *Dania* ruling, have required a showing of improper conduct before allowing a Plaintiff to pierce the corporate veil. In *USP Real Estate Investment Trust, v. Discount Auto Parts, Inc*., 570 So. 2d 386 (Fla. Dist. Court of Appeal, 1st Dist. 1990), the First District Court of Appeal applied the test in *Dania* to determine whether or not to pierce the corporate veil. The court, in holding that piercing the corporate veil was appropriate in this matter, only did so after finding that a corporation, *without Plaintiff's knowledge*, created a subsidiary for the sole purpose of leasing a commercial space (thereby not conducting any of its own business) with the intent of misleading the Plaintiff that it was the subsidiary that was conducting business at the location when in fact it was the parent that operated a business at the property. *Id*. at 393. The court further found that the parent undertook this action with the intent of absolving itself from any liability. *Id*. Notably, the dissent in this matter stated that the landlord:

". . . may have been outsmarted, but it wasn't defrauded or misled except by its own

3

> ineptness and inattention. A simple inquiry by USP as to the identity and status of the parties and their financial responsibility would have allowed it to make an informed judgment on its consent to the lease assignment. Such inquiry would be a normal prudent business practice . . . this court has no business protecting USP or anyone else from its exercise of poor judgment."

*Id*. at 394. The dissent pointed out that the majority was "reading into" the facts when it found that the parent company intended to mislead the lessor when it had its subsidiary enter into the lease. The dissent is notably in line with the Seventh Circuit's finding in *On Command Video Corporation v. Samuel J. Rot*i, 705 F.3d 267 (7th Circ. 2013). In *On Command Video*, the court found that Plaintiffs cannot now seek to benefit from a recovery for breach of contract and piercing the corporate veil when they were themselves acting with a lack of due diligence and care by entering into the Agreement. *Id*.

In *Mohamood Ally v. Mohammed Naim*, 581 So. 2d 961 (Dist. Court of Appeal 3rd Dist.), the Third District Florida Court of Appeal, in finding that the test in *Dania* had not been met, relied on the *Advertects, Inc. v. Sawyer Indus., Inc*. 84 So. 2d 21 (Fla. 1955) finding wherein the Florida Supreme Court held that a corporate veil shall not be pierced "unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." *Ally*, 581 So. 2d at 963; citing to *Advertects*, 84 So. 2d at 23-24. It is not enough that the business affairs had been poorly handled. There must also be a showing "that the stockholders had improperly converted . . . its property to their own use or . . . fraudulently or inequitably abused their relationship with the corporate entity." *Id*.

Enterprises did not have any involvement or responsibilities whatsoever with regards to the Share Purchase Agreement and therefore could not have engaged in any improper conduct that would allow for any piercing of the corporate veil. More fundamentally, there is no evidence that Group is a subsidiary of Enterprises, that Group was created by Enterprises, or that

4

Enterprises was to in any way fund the transaction stated in the Agreement. Therefore, under the *Dania* standard, there is simply no basis to find that Enterprises used the corporate form of Group to act in a misleading or fraudulent manner.

Similarly, Wight did not use the corporate form of Group for any improper or fraudulent purpose. Plaintiffs seemingly rely on two fundamental arguments. First, that Wight, by executing the Agreement, represented that Group had sufficient cash on hand to execute the transaction, and second, that Wight misrepresented the viability of Group. These allegations, when taken in the context of the full set of relevant facts, are wholly insufficient to satisfy the standard in *Dania*.

It is wholly misleading and improper to look at the allegation that Wight represented, by signing the Agreement, that Group had sufficient funds in a vacuum, and not look at the entire picture. The parties had been in discussion for a significant period of time to enter into some form of a transaction. Wight, with Plaintiffs' full knowledge, was seeking to build a business wherein the company, in part, would engage in the exhibition of salvaged good such as the Titanic artifacts. As such, Group was engaged in ongoing discussions with Plaintiffs and their representatives on the potential form of acquiring Premier Exhibtions ("Premier") (which owns certain Titanic artifacts), either through a stock transaction with Premier directly, a cash transaction, or to acquire Plaintiffs' Premier shares. Group's intent was to acquire a sufficient ownership percentage such that it could gain control of Premier and govern the use of the artifacts. Wight was simply not seeking to purchase anything for himself or his personal use. Instead, he was seeking to build a company, a business that was in part centered on acquiring a significant share of Premier.

The parties ultimately settled on the terms as outlined in the Agreement, and as Buyers do

in such agreements, Wight was essentially representing that Group would have the necessary funds at the time of closing. Notably, Plaintiffs, for months prior to the Agreement and for the entire duration after the signing of the Agreement, were fully aware that Group did not have the funds. *JX 40, 55*. To suggest that Wight somehow misled or acted in a fraudulent way by signing an Agreement that represented Group had sufficient funds, Plaintiffs are fully ignoring months of communications and interactions between the parties. Furthermore, it is by no means unusual for a Buyer, in such an agreement, to represent that it would be able to acquire the necessary funds to close a deal.

Similarly, Plaintiffs were fully aware of the financial status of Group. The company information provided by Group was solely of a "forecasting" nature. *JX 9*. In response to multiple requests for proof of funds both prior to and after the signing of the Agreement, Group never provided any such proof of funds. *JX 40, 55*. Plaintiffs entered into the Agreement with their eyes fully open.

Even more importantly, the history of interactions between the parties and the efforts made by Group and Wight to close the deal fly in the face of any argument that Wight acted with an improper, fraudulent, or misleading purpose. Wight, and his representatives, were in regular contact with Samuel Weiser regarding every step of the transaction. This included the submission of names of individuals to appoint as directors (as required per the Agreement), drafting of press releases and related documents, discussions on funding of Premier after the transaction closed, and general strategy. *JX 68, 35, 57, 61*. Wight did in fact seek financing from multiple sources and did create Group, not as some essential non-entity for the mere purpose of somehow misleading Plaintiffs, but instead with the intent to create a full-fledged exhibition company. *JX 6, 8, 23, 28, 30, 31, 38, 51*. Notably, Group, through Wight and his

representatives, requested an extension when it did not yet have the funds to close. *JX 77*. These actions are not those of an individual seeking to use the corporate form for some improper or fraudulent purpose. *JX 85* (Sellers, in an email to Weiser, states in part, "Why would they want an extension if they have no intention to close"). Wight fully intended to close the deal.

In applying *Dania* to the facts at hand, the court must not only consider the actions of Wight, but those of the Plaintiffs as well. In doing so, Defendants submit that the analysis will lead to the conclusions reached by the dissent in *USP* and by the Seventh Circuit in *On Command Video*. Plaintiffs had the benefit of all the relevant information at the time of the execution of the Agreement. For any information that they did not have, Plaintiffs not only had the opportunity, but also the responsibility to simply demand said information from Defendants prior to entering into the Agreement. This court should not reward Plaintiffs for their own "poor judgment".

By:__/s/ Rishi Agrawal_____
Rishi Agrawal
Attorney for Defendants

Rishi Agrawal
The Agrawal Firm, LLC
415 North LaSalle Street, #502
Chicago, IL 60654
(312) 527-5440

## CERTIFICATE OF SERVICE

I, RISHI AGRAWAL, an attorney certify that on July 13, 2017, that I caused to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the above Trial Brief, using the CM/ECF system, which shall send notice of this filing to all counsel of record.

By:_/s/ Rishi Agrawal_____
Attorney for Defendants