IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELLERS CAPITAL, LLC, and SELLERS CAPITAL MASTER FUND, LTD., | ) ) ) | |
| Plaintiffs, | ) ) | No. 15 C 7644 |
| v. | ) ) ) | Jeffrey T. Gilbert Magistrate Judge |
| GEORGE WIGHT, ARMADA GROUP, GP, INC., AND ARMADA ENTERPRISES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

In advance of trial, which currently is set to begin on August 7, 2017, Plaintiffs Sellers Capital, LLC and Sellers Capital Master Fund, Ltd. (collectively, "Plaintiffs") filed three motions: Plaintiffs' Motion *in Limine* No. 1: To Exclude Parol Evidence from Trial ("Plaintiffs' MiL No. 1"), [ECF No. 89]; Plaintiffs' Motion *in Limine* No. 2: To Exclude Evidence That All Contract Conditions Were Not Met ("Plaintiffs' MiL No. 2"), [ECF No. 91]; Plaintiffs' Motion *in Limine* No. 3: To Bar Evidence Offered in Support of Affirmative Defenses Not Pleaded ("Plaintiffs' MiL No. 3"), [ECF No. 92]. Defendants George Wight ("Wight"); Armada Group, GP, Inc. ("Group"); and Armada Enterprises, Inc. ("Enterprises") (collectively, "Defendants") did not file any motions *in limine* and they oppose Plaintiffs' motions. For the reasons stated below, Plaintiffs' Motion *in Limine* No. 1 [ECF No. 89] is granted in part and denied in part, their Motion *in Limine* No. 2 [ECF No. 91] is denied, and their Motion *in Limine* No. 3 [ECF No. 92] is granted in part and denied in part.

## I. BACKGROUND

The following summary of this case comes from the parties' proposed final pretrial order, Final Pretrial Order, [ECF No. 90], at 4–5:

"Plaintiffs allege they contracted to sell shares of stock in a company called Premier Exhibitions, Inc. ('Premier') to Group for $16,201,688. To this end, Plaintiffs executed a Stock Purchase Agreement ('Agreement') with Group on October 15, 2014. The Agreement required Group to pay the $16,201,688 million cash purchase price to Plaintiffs no later than November 20, 2014, provided all of the Agreement's conditions precedent were met. Group did not pay the purchase price by November 20, 2014, and the sale contemplated by the Agreement did not close. Plaintiffs have sued Group for breach of the Agreement, and seek damages of not less than $14,998,134 . . . . Plaintiffs have also brought breach of contract claims against Wight personally and Enterprises on a veil-piercing/alter-ego theory, alleging that Group was a sham corporation that Wight used for an improper purpose in a manner that harmed Plaintiffs. In the alternative, if the Court finds that Group's corporate veil cannot be pierced, Plaintiffs allege that Wight and Enterprises tortiously interfered with the Agreement, primarily by failing to provide Group with the cash required to close the deal.

Defendants deny all of the allegations made by Plaintiffs. Specifically, Defendants allege that the Agreement is not valid and enforceable and, in the alternative, was violated by Plaintiffs. Defendants Wight and Enterprises further allege that they did not act in an improper manner that harmed Plaintiffs or otherwise tortiously interfered with the Agreement. Additionally, Defendants argue that Plaintiffs failed to mitigate and cannot prove damages."

2

## II. LEGAL STANDARD

The district court has the inherent authority to manage the course of a trial. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The court may exercise this power by issuing an evidentiary ruling in advance of trial. *Id.* A party may seek such a ruling by filing a motion *in limine*, which requests the court's guidance on what evidence will (or will not) be admitted at trial. *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Prudent motions *in limine* serve a gatekeeping function by allowing the judge "to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). By defining the evidentiary boundaries, motions *in limine* both permit "the parties to focus their preparation on those matters that will be considered by the jury," *id.*, and help ensure "that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).[1]

As with all evidentiary matters, the court has broad discretion when ruling on motions *in limine*. *United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Moreover, the court can change its ruling at trial, "even if nothing unexpected happens[.]" *Luce*, 469 U.S. at 41. Rulings *in limine* are speculative

---

[1] Although this case will be tried to the bench rather than to a jury, similar considerations apply. Although the bench presumably is better able than a juror to disregard irrelevant or even prejudicial evidence, Plaintiffs' motions *in limine* here do not primarily raise those kinds of concerns. Rather, Plaintiffs' motions, at least as framed and presented, raise issues relating to the admissibility of certain evidence as a matter of law given the legal claims and defenses actually asserted by the parties in this case. Therefore, Plaintiffs' motions are directed more to the Court's role as gatekeeper to ensure the trial proceeds efficiently and economically without unnecessarily consuming judicial resources or the resources of the parties. That is a proper use of a motion *in limine* even in a bench trial. *See United States v. Brown*, 2017 WL 219521, at *1 (N.D. Ill. Jan. 19, 2017); *Holmes v. Godinez*, 2016 WL 4091625, at *1 (N.D. Ill. Aug. 2, 2016); *Intermatic Inc. v. Toeppen*, 1998 WL 102702, at *3 (N.D. Ill. Feb. 28, 1998).

in effect; essentially, they are advisory opinions. *Wilson*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part).

The court will grant a motion *in limine* to bar evidence only where that evidence is clearly inadmissible for any purpose. *Taylor v. Union Pac. R. Co.*, 2010 WL 5421298, at *1 (S.D. Ill. Dec. 27, 2010). This is a high standard. *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007). The moving party bears the burden of establishing clear inadmissibility. *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F. Supp. 2d 928, 934 (N.D. Ill. 2009). If the moving party cannot satisfy her burden, the evidentiary ruling should be deferred until trial. *Green v. Goodyear Dunlop Tires N. Am., Ltd.*, 2010 WL 747501, at *1 (S.D. Ill. Mar. 2, 2010). That is because, at trial, the court will have the benefit of understanding "the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011).

### III. DISCUSSION

The Court will address each of Plaintiffs' motions *in limine* in turn.

### 1. Parol Evidence (Motion *in Limine* No. 1)

Plaintiffs' Motion *in Limine* No. 1 is focused on what Plaintiffs characterize as inadmissible parol evidence. Plaintiffs' MiL No. 1, [ECF No. 89], at 1. Plaintiffs argue the Agreement contains an integration clause and the meaning of that Agreement is unambiguous. *Id.* ¶¶ 1–13. Thus, Plaintiffs say, Illinois law precludes the use of parol evidence to alter the meaning of the Agreement. In response, Defendants say they are not planning to introduce evidence in an attempt to alter or vary the plain meaning of the Agreement. Defendant Armada Group, GP, Inc.'s, Armada Enterprises, Inc.'s, and George Wight's Response to Plaintiffs' Motion *in Limine* No. 1: To Exclude Parol Evidence from Trial ("Defendants' MiL No. 1

4

Response"), [ECF No. 93], ¶ 1; *see also id.* ¶ 7 ("Defendants, as noted above, will not be seeking to alter or vary the meaning of the terms of the Agreement."). So, the parties do not disagree that parol evidence should not be admitted in this case. The parties disagree, however, whether certain evidence that Defendants want to introduce constitutes parol evidence.

For instance, Defendants intend to introduce evidence that, in their view, will show Mark Sellers, a member of Plaintiff Sellers Capital, LLC, and/or Samuel Weiser, Premier's CEO and a member of Plaintiff Sellers Capital, LLC, breached a fiduciary duty by executing and performing the obligations imposed by the Agreement. Defendants claim this evidence is relevant to the representation in Article 3.3 of the Agreement, in which Plaintiffs and Mark Sellers ("the Sellers") state that the "execution, delivery and performance" of the Agreement and "the consummation . . . of the transactions contemplated hereby does not and will not, with or without the giving of notice or the lapse of time, or both, (a) violate any provision of any Law to which any Seller is subject, or (b) violate or breach any provision of the articles of organization, operating agreement or other organizational or governance documents of any Seller, as applicable." Agreement, [ECF No. 89-2], at 4. The term "Law" is defined in the Agreement to include the common law. *Id.* at 12. In other words, Defendants argue Mark Sellers and Samuel Weiser breached their fiduciary duties in violation of the common law in connection with the execution, delivery, and performance of the Agreement and, by doing so, they breached Article 3.3 of the Agreement.

Defendants affirmatively state they accept the representation in Article 3.3 of the Agreement and are not seeking to alter its meaning. Defendants' MiL No. 1 Response, [ECF No. 93], ¶ 5. Rather, they want to introduce evidence they contend will show the Sellers breached that unambiguous representation. Plaintiffs contend the evidence Defendants want to introduce

amounts to parol evidence intended to "turn Article 3.3 into something different than the admittedly plain wording provides." Plaintiffs' Reply Memorandum in Support of Their Motion in Limine No. 1: To Exclude Parol Evidence from Trial ("Plaintiffs' MiL No. 1 Reply"), [ECF No. 94], at 3. But that is just another way of saying Plaintiffs disagree with Defendants that the Sellers breached their covenant in Article 3.3 of the Agreement.

The Court is not convinced by Plaintiffs' parol evidence argument. If, as Plaintiffs seem to assert, Article 3.3 does not encompass the duties Defendants say it does, or a breach of any such duty, then irrelevance may be a proper objection to the evidence Defendants want to introduce. The Court can interpret and apply Article 3.3 of the Agreement and determine what it does and does not encompass. But the parties do not address the issue in this way, focusing instead on whether Defendants' theories and proposed arguments are barred by the parol evidence rule. The Court does not see the issue that way. The Court will, however, reserve ruling on the relevance of the evidence Defendants apparently will seek to introduce and discuss this matter further with the parties at the pretrial conference. Further, if Defendants want to argue Plaintiffs breached Article 3.3 of the Agreement, then they have to address the actual language of Article 3.3 and not an inaccurate or incomplete paraphrase of that language.[2]

In a similar vein, the parties disagree about whether Defendants can introduce evidence related to Article 3.4 of the Agreement, in which Plaintiffs and Mark Sellers represent that they "are not aware of any material non-public information in their possession that [Premier] was previously required to disclose in the periodic and other reports [Premier] is required to file with the [SEC], which, if so disclosed would have been reasonably likely to have had a material

---

[2] Plaintiffs are correct that Defendants misquote Article 3.3 of the Agreement. To that extent, the Court agrees Article 3.3 does not encompass everything Defendants say it does. Plaintiffs also are correct that Defendants cannot rewrite the clear and unambiguous language in the Agreement. The Court parts ways with Plaintiffs to the extent they argue the parol evidence rule would preclude Defendants from arguing Plaintiffs breached the actual terms of Article 3.3 of the Agreement, if that is what Plaintiffs are arguing.

adverse effect on the current market value of the [Premier] Shares." Agreement, [ECF No. 89-2], at 4. Plaintiffs want to bar Defendants from arguing that Plaintiffs' and Mark Sellers' compliance with this provision is a condition precedent to Group's performance. Plaintiffs' MiL No. 1 Reply, [ECF No. 94], at 3. Defendants seem to be saying they do not intend to make this argument, although it is admittedly difficult to figure out what Defendants are saying in their two-sentence response to Plaintiffs' motion on this issue. Defendants' MiL No. 1 Response, [ECF No. 93], at ¶ 5. Instead, Defendants say they may introduce evidence showing Plaintiffs violated Article 3.4, which would then be a material breach of the Agreement and excuse Defendants' performance under the Agreement. *Id.* In reply, Plaintiffs argue there is no evidence to show any breach of the representation contained in Article 3.4 of the Agreement. Again, this appears to be an argument about the significance or weight of certain evidence, or even the existence of admissible evidence, not a parol evidence issue.

The logic again is the same with respect to the parties' dispute about Article 4.6 of the Agreement, in which Group represents that it made its own decision to enter into the transaction based on "its own independent investigation" of Premier, which it "conducted to its satisfaction" and during which it had access to certain materials. Agreement, [ECF No. 89-2], at 4. Defendants affirmatively state they will not introduce evidence to alter or vary the meaning of Article 4.6. Defendants' MiL No. 1 Response, [ECF No. 93], ¶ 5. But Plaintiffs contend that, because of this provision, Defendants should be precluded from introducing evidence "that Group's investigation of Premier was limited or lacking . . . or that the Sellers Capital was somehow denied access to information about Premier." Plaintiffs' MiL No. 1 Reply, [ECF No. 94], at 5. The Court does not agree. Defendants do not intend to introduce evidence showing the representation in the contract means something other than what it says. Instead, they say they

may introduce evidence showing that, in reality, the investigation they conducted was deficient and/or that they did not have access to certain materials. Perhaps Plaintiffs think such evidence would have no impact on the outcome of this lawsuit under the governing law. But their motion *in limine* is premised on the parol evidence rule, not Federal Rule of Evidence 401. Again, Defendants do not seem to be planning to introduce evidence that would vary the terms of the Agreement.

Finally, the Court notes that the parties do not seem to disagree about what evidence Defendants can introduce, consistent with the parol evidence rule, to show that Premier refused to appoint board members proposed by Group unless Group agreed to certain demands not contained in the Agreement. Plaintiffs say those demands were never agreed to in writing and duly executed, meaning they never became part of the Agreement under Article 7.4. Plaintiffs' MiL No. 1 Reply, [ECF No. 94], at 5. Defendants represent that they do not intend to argue "these demands modified the plain meaning of the Agreement." Defendants' MiL No. 1 Response, [ECF No. 93], ¶ 6. Instead, they will argue the demands "amounted to a frustration of purpose." *Id.* Plaintiffs seem to accept this distinction, although they contend evidence of a "frustration of purpose" defense should be barred under their third motion *in limine* discussed later in this Memorandum Opinion and Order. Plaintiffs' MiL No. 1 Reply, [ECF No. 94], at 5. As discussed below, the Court is granting Plaintiffs' motion to bar Defendants from asserting a commercial frustration defense. The Court will discuss with the parties at the pretrial conference what impact this ruling has on Defendants' argument that Premier refused to appoint board members proposed by Group unless Group agreed to certain demands not contained in the Agreement.

For all of these reasons, Plaintiffs' Motion *in Limine* No. 1 is granted to the extent it seeks to bar evidence introduced to alter or vary the unambiguous meaning of the Agreement and is denied to the extent it seeks to bar evidence that Plaintiffs or Sellers breached a particular provision of the Agreement. Again, the Court will address these issues with the parties in more detail at the pretrial conference.

## 2. Conditions Precedent (Motion *in Limine* No. 2)

Plaintiffs' Motion *in Limine* No. 2 is focused on the conditions precedent to Group's performance under the Agreement. Plaintiffs' MiL No. 2, [ECF No. 91], ¶ 1. Plaintiffs say there are three such conditions. *Id.* First, Premier shall have appointed three board members effective immediately after the closing. *Id.* ¶ 2. Second, Mark Sellers shall resign from Premier's board effective on the closing date. *Id.* Third, Plaintiffs shall deliver to Group written evidence that they have taken certain steps necessary to transfer ownership of the shares of Premier stock. *Id.* Plaintiffs seek an order that "declar[es] all conditions precedent to Group's [performance] . . . were met" and bars any evidence or argument that a condition precedent was not met. *Id.* ¶ 17.

Plaintiffs argue such an order is appropriate for two reasons. Plaintiffs first contend that Group's Rule 30(b)(6) deponents testified the conditions precedent were met and that this testimony qualifies as a binding judicial admission that cannot be contradicted at trial. *Id.* Rule 30(b)(6) testimony, however, "is not a judicial admission that ultimately decides an issue" but, rather "is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000); *see also Evangelical Ben. Trust v. Lloyd's Underwriters Syndicate Nos. 2987, 1607, 1183 & 2001*, 2012 WL 379632, at *4 (N.D. Ill. Feb. 3, 2012) ("Rather, [Rule 30(b)(6)] testimony, 'like any other deposition testimony, can be contradicted.'") (quoting *A.I. Credit*

9

*Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001)); *Cuff v. Trans States Holdings, Inc.*, 816 F. Supp. 2d 556, 559 (N.D. Ill. 2011) ("So a business entity may produce evidence that supplements or is contrary to its Rule 30(b)(6) deposition testimony."); *Cat Iron, Inc. v. Bodine Envtl. Servs., Inc.*, 2011 WL 2457486, at *9 (C.D. Ill. June 15, 2011) ("Rule 30(b)(6) testimony can be used as evidence, but not a judicial admission that ultimately decides an issue, and the court will not hold Plaintiff as absolutely bound to the designee's recollection."); *First Internet Bank of Indiana v. Lawyers Title Ins. Co.*, 2009 WL 2092782, at *4 (S.D. Ind. July 13, 2009) ("A Rule 30(b)(6) deposition produces evidence, not judicial admissions."). Thus, even if Plaintiffs characterization of Group's Rule 30(b)(6) deponents' testimony is correct, that would not be a sound basis for precluding Defendants from introducing evidence that a condition precedent had not been satisfied.

Plaintiffs' second argument is that it would be a waste of time within the meaning of Federal Rule of Evidence 403 to permit the introduction of evidence showing a condition precedent was not satisfied. Plaintiffs say the evidence proves the conditions were satisfied and Defendants cannot contend otherwise. Again, if the Court is correct about the gravamen of Plaintiffs' argument, Plaintiffs essentially want the Court to find as a matter of fact and law that all conditions precedent have been met and, based on that finding, to bar evidence and argument, and presumably to enter judgment in Plaintiffs' favor on this issue before trial.

In response, Defendants argue Plaintiffs are improperly using a motion *in limine* as a substitute for a motion for summary judgment. Defendant Armada Group, GP, Inc.'s, Armada Enterprises, Inc.'s, and George Wight's Response to Plaintiffs' Motion *in Limine* No. 2: To Exclude Evidence That All Contract Conditions Were Not Met, [ECF No. 95], ¶ 1. Defendants

say they denied in their Answer that all conditions precedent were met and there is evidence indicating at least one of the conditions precedent was not met. *Id.* ¶¶ 2–5.

At most, the parties appear to be arguing about the weight to be accorded evidence each side intends to offer at trial. Perhaps Plaintiffs win this argument, but the Court is not prepared to decide that issue in the context of a vehicle labeled as a motion *in limine* that, in reality, appears to be something more akin to a smuggled attempt to secure summary judgment. Motions *in limine* should not be used "to avoid the rigor required for summary judgment motions (such as statements of material undisputed facts supported by specific citations to the discovery record)." *Schuster v. Shepard Chevrolet, Inc.*, 2002 WL 507130, at *11 (N.D. Ill. Apr. 3, 2002); *see also C&E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 316, 323 (D.D.C. 2008) (explaining summary judgment, "with its accompanying and crucial procedural safeguards," is the proper procedural vehicle to resolve arguments that an opposing party's claim is unsupported by the evidentiary record).

The Sixth Circuit Court of Appeals dealt with this issue at some length in *Louzon v. Ford Motor Company*, 718 F.3d 556 (6th Cir. 2013). In that age and national-origin discrimination and retaliation case, the defendant filed a motion *in limine* seeking to bar the plaintiff's evidence related to comparable employees. *Id.* at 558. The district court concluded each of the seven supposedly comparable employees did not report to the plaintiff's supervisor, meaning that, as a matter of law, they were not similarly situated. *Id.* at 560. Based on this conclusion, the district court excluded the evidence. *Id.*

The Court of Appeals reversed. The Sixth Circuit recognized the defendant "attempt[ed] to infuse into [the] motion an evidentiary matter" by arguing evidence related to the comparable employees was inadmissible under Federal Rules of Evidence 401 and 402 because it was not

11

probative of the plaintiff's claims. *Id.* at 562–63. But the Court of Appeals saw through the defendant's framing of the issue, noting its "argument rests entirely on the presumption that [the plaintiff] would not be able to make out a prima facie case of discrimination." *Id.* at 563. As the Sixth Circuit put it, resolving whether Plaintiff's evidence was insufficient as a matter of law "require[d] a summary-judgment analysis." *Id.* at 562. The Court of Appeals rejected the notion that such an argument could be raised in a motion *in limine* by bootstrapping it on to "the duplicative argument that the evidence relating to the matter at issue is irrelevant." *Id.* at 563. Therefore, the Court of Appeals concluded, motions *in limine* "should not be considered" when they are "no more than a rephrased summary-judgment motion." *Id.*

In this case, Plaintiffs' Motion *in Limine* No. 2 crosses the same line. Plaintiffs explicitly ask the Court to "declar[e] that all conditions precedent to Group's [performance] were met." Plaintiffs' MiL No. 2, [ECF No. 91], ¶ 17. That is the type of finding a court should make at summary judgment; it is not an evidentiary ruling. Plaintiffs' attempt to tie their motion to Rule 403 does not change that fact, for the reasons the Sixth Circuit articulated in *Louzon.* So, Plaintiffs' motion can be denied on this basis alone.[3]

There is another problem with Plaintiffs' Motion. Plaintiffs are not seeking to bar all evidence related to whether the conditions precedent were satisfied. They are seeking only to bar evidence that the conditions were not satisfied. *Id.* at p. 1, ¶ 17. If there is no such evidence, as Plaintiffs claim, the Court does not see how barring nonexistent evidence will save time within

---

[3] The Court's analysis is similar with respect to the two conditions precedent that Defendants do not address in their response brief. In the Court's view, the theory underlying Plaintiffs' motion *in limine* would require the Court to make factual and legal findings before declaring those conditions were met and excluding evidence and argument related to that issue. If the parties stipulate that these conditions were satisfied, the admissibility of evidence contradicting those stipulations can be addressed.

the meaning of Federal Rule of Evidence 403.[4] But, if there *is* contrary evidence, then the theory underlying Plaintiffs' Motion—which is that "Defendants cannot point to any contrary facts," *id.* ¶ 3—is unsound.

For all of these reasons, Plaintiffs' Motion *in Limine* No. 2 [ECF No. 91] is denied.

**3. Affirmative Defenses (Motion *in Limine* No. 3)**

Plaintiffs' Motion *in Limine* No. 3 is focused on what Plaintiffs characterize as newly-asserted affirmative defenses. Plaintiffs' MiL No. 3, [ECF No. 92], at 1. Plaintiffs say Defendants raised three affirmative defenses in their Proposed Findings of Fact and Conclusions of Law that they did not plead in their Answer. *Id.* ¶ 3. The first is commercial frustration. The second is Plaintiffs' material breach. And the third, which "defies easy categorization" according to Plaintiffs, is that Plaintiffs were "fundamentally negligent and reckless" in entering into the Agreement. *Id.* ¶ 14. Plaintiffs seek to bar Defendants from offering evidence or argument related to any of these so-called affirmative defenses. *Id.* at 1.

Plaintiffs' first focus on Defendants' belatedly asserted commercial frustration defense. Defendants concede that commercial frustration is an affirmative defense and that they "did not explicitly plead" it in their Answer. Defendant Armada Group, GP, Inc.'s, Armada Enterprises, Inc.'s, and George Wight's Response to Plaintiffs' Motion *in Limine* No. 3: To Bar Evidence Offered in Support of Affirmative Defenses Not Pleaded ("Defendants' MiL No. 3 Response"), [ECF No. 96], ¶ 9. They argue, however, that this defense can be "reasonably inferred" from the

---

[4] In Plaintiffs' Proposed Findings of Fact and Proposed Conclusions of Law, they say a plaintiff must establish he has performed all conditions precedent to prove performance. Plaintiffs' Proposed Findings of Fact and Proposed Conclusions of Law, [ECF No. 90-1] ¶ 18 at p. 31–32. Plaintiffs also state, "All conditions precedent to Group's obligations under the Agreement were satisfied." *Id.* ¶ 20 at p. 32. The parties' stipulations, which are reflected in their proposed pretrial order, do not address whether any condition precedent was met. Proposed Final Pretrial Order, [ECF No. 90], at 15. That means that, even if the Court were to bar contrary evidence, Plaintiffs would have to introduce evidence showing the conditions precedent were met in order for the Court to make the finding Plaintiffs propose.

second and third affirmative defenses Defendants did raise in their Answer. *Id.* ¶ 11. In those two affirmative defenses, Defendants alleged "Plaintiffs demanded additional financial contribution from [Group] . . . in order to sell the shares." Defendant Armada Group, GP, Inc.'s, Armada Enterprises, Inc.'s, and George Wight's Answer to Second Amended Complaint, [ECF No. 39], at 17. Defendants alleged that these demands (a) modified the terms of the Agreement, thereby rendering the Agreement unenforceable (Affirmative Defense No. 2) and (b) establish a failure of performance by Plaintiffs under the Agreement (Affirmative Defense No. 3). *Id.* at 17–18.

"The commercial frustration defense is 'not to be applied liberally' and is only appropriate if a 'rigorous' two-part test is satisfied." *Blue Cross Blue Shield of Tennessee v. BCS Ins. Co.*, 517 F. Supp. 2d 1050, 1059 (N.D. Ill. 2007). "To satisfy that rigorous test, a party must demonstrate that: (1) the frustrating event was not reasonably foreseeable; and (2) the value of counterperformance has been totally or nearly totally destroyed by the frustrating event." *Id.* at 1059–60 (quoting *N. Illinois Gas Co. v. Energy Co-op., Inc.*, 461 N.E.2d 1049, 1059 (Ill. App. Ct. 1984)). The Court is not convinced Defendants' skeletal pleadings were sufficient to put Plaintiffs on notice of a commercial frustration defense. Defendants do not actually allege whether Plaintiffs' additional demands were foreseeable or even that Plaintifsf or Defendants "frustrated" Defendants' ability to perform. Further, none of Defendants' allegations come remotely close to saying the additional demands "totally or nearly totally destroyed" the value of Defendants' counter-performance under the Agreement.

"[A] delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). In their opening brief, Plaintiffs do not address whether they were prejudiced by Defendants' belated assertion of

14

the commercial frustration defense. In their reply, Plaintiffs say they were prejudiced and accused Defendants of "escap[ing] discovery" by failing to provide notice of the defense. Plaintiffs' MiL No. 3 Reply, [ECF No. 98], at 4. Plaintiffs indicate they would have taken discovery had the defense been disclosed. They note, for example, that neither Wight nor Milan Saha were "asked questions on the elements of commercial frustration at their depositions" and "Plaintiffs propounded no interrogatories on the subject, nor sought documents." *Id.* The harm caused by Plaintiffs' inability to take discovery is sufficient to justify precluding Defendants' from asserting on the eve of trial a commercial frustration defense.

While the Court does not usually credit arguments made for the first time in a reply brief, the prejudice here seems obvious. The new affirmative defense Defendants want to assert is different from the defenses they raised early in the litigation. Those defenses went to the issue of Plaintiffs' purported modification the Agreement, not to the issue of commercial frustration from Defendants' point of view. The Court does not agree Defendants have met their burden to show this additional affirmative defense should be permitted at the eleventh hour and on the eve of trial. Therefore, the Court will not allow Defendants to assert this defense at trial.

Next, Plaintiffs claim Defendants are belatedly asserting that Plaintiffs materially breached the Agreement, thereby excusing Defendants' non-performance. Plaintiffs' MiL No. 3, [ECF No. 92], ¶ 8. In particular, Plaintiffs object to Defendants' attempts to introduce evidence to show Mark Sellers and/or Samuel Weiser breached their fiduciary duties and to argue these breaches violated Article 3.3 of the Agreement. *See id.* (focusing on paragraphs 10 to 20 of Defendants' Proposed Findings of Fact and Conclusions of Law); Defendants' Proposed Findings of Fact and Proposed Conclusions of Law, [ECF No. 90-2], ¶¶ 10–20. Defendants respond by saying Plaintiffs must show they have fully performed the terms of an enforceable

15

contract to establish the elements of their breach of contract claim. *See* Defendants' MiL No. 3 Response, [ECF No. 96], ¶ 2. Defendants assert the Court must allow them to submit evidence that negates Plaintiffs' claim by showing Plaintiffs did not fully perform. *Id.* ¶¶ 4, 5.

"[A]n affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (quoting *Defense*, Black's Law Dictionary (10th ed. 2014)) (internal alterations and quotation marks omitted). The Illinois Appellate Court stated in a 2012 unpublished decision that, under Illinois law, "the defense that plaintiff materially breached the agreement is not an affirmative defense but, rather, is an attack on the sufficiency of plaintiff's claim." *Envision Graphics, LLC v. Domeracki*, 2012 WL 6969209, at *6 (Ill. App. Ct. Aug. 16, 2012). The one case cited by Plaintiffs does not establish to the contrary. *Am. Top English v. Lexicon Mktg. (USA), Inc.*, 2004 WL 2271838 (N.D. Ill. Oct. 4, 2004). In *Top English*, the court's inquiry was limited to whether the counterclaim-defendant's attempt to plead prior material breach as an affirmative defense complied with the relevant pleading standard. *Id.* at *11. The court did not consider whether prior material breach had to be pled as an affirmative defense or whether the failure to plead it justifies precluding evidence at trial.

Defendants cite no law in support of their position that a prior material breach by Plaintiffs negates Plaintiffs' affirmative contract claim and does not constitute an affirmative defense that must be separately pled. The Court has not independently researched the existential issue of whether Defendants' argument that Plaintiffs breached the agreement is an affirmative defense or, instead, is an argument that Plaintiffs cannot meet their burden of proof on their contract claim. The Court, however, is sympathetic to Defendants' argument on this issue given the allegations in Plaintiffs' operative Complaint, and given that Plaintiffs have cited no

authority that clearly holds a party's prior material breach of the contract it seeks to enforce should be characterized as an affirmative defense. *See* Plaintiffs' Second Amended Complaint, [ECF No. 30], ¶ 60 ("Plaintiffs and Mark Sellers performed all of their obligations under the Agreement.")

There is, however, another problem with Plaintiffs' argument. As stated above, "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis*, 436 F.3d at 711. In this instance, Plaintiffs state only in the most general terms that allowing Defendants to pursue their Article 3.3 theory at trial will prejudice Plaintiffs. Plaintiffs' MiL No. 3, [ECF No. 92], ¶ 13; Plaintiffs' Reply Memorandum in Support of Their Motion *in Limine* No. 3: To Bar Evidence Offered in Support of Affirmative Defenses Not Pleaded ("Plaintiffs' MiL No. 3 Reply"), [ECF No. 98], at 5. The conclusory nature of this assertion contrasts significantly with how Plaintiffs argued prejudice in the commercial frustration context. Because Plaintiffs have not made any meaningful showing of prejudice with respect to Defendants' Article 3.3 argument, the Court is not convinced that, even if it constitutes an affirmative defense, Defendants should be precluded from raising it. However it is characterized, the gist of Defendants' argument appears to have been in this case for some time. It is different packaging for Defendants' theory that Mark Sellers and/or Samuel Weiser breached their fiduciary duties discussed earlier in this Opinion.[5]

Finally, Plaintiffs take issue with paragraph 26 of Defendants' Proposed Findings of Fact and Conclusions of Law. In that paragraph, Defendants propose the Court find Plaintiffs cannot

---

[5] Plaintiffs also contend that, on the merits, Article 3.3 does not cover the supposed breaches of fiduciary duty by Mark Sellers or Samuel Weiser and that Defendants' Article 3.3 argument is based on parol evidence. For the reasons already discussed earlier in this Memorandum Opinion and Order, the Court does not agree with Plaintiffs' characterization of Defendants' argument as raising parol evidence. In the end, as also discussed above, this appears to be a dispute about the relevance and probative value of certain evidence. The Court can address those issues with the parties at the pretrial conference.

pierce the corporate veil because they acted without due diligence and care by entering into the Agreement "despite fully knowing Group did not have the funds to close the deal." Defendants' Proposed Findings of Fact and Proposed Conclusions of Law, [ECF No. 90-2], ¶ 26. Plaintiffs contend this amounts to an unpled affirmative defense based on inadmissible parol evidence. Plaintiffs' MiL No. 3, [ECF No. 92], ¶¶ 14–16. Plaintiffs also argue this is "not a strong argument" because the Seventh Circuit precedent relied upon by Defendants is distinguishable and did not involve Florida law, which governs the veil piercing claims in this case.[6] Plaintiffs' MiL No. 3 Reply, [ECF No. 98], at 10; *see also id.* at 5–10. In response, Defendants say paragraph 26 does not represent an affirmative defense, but, rather "is simply a legal argument that Plaintiffs' cannot pierce the veil in this matter." Defendants' MiL No. 3 Response, [ECF No. 96], ¶ 8.

In Plaintiffs' Proposed Findings of Fact and Conclusions of Law, they say veil piercing is appropriate under Florida law when there is a showing of improper conduct, which includes, among other things, using the corporate form to mislead creditors. Plaintiffs' Proposed Findings of Fact and Proposed Conclusions of Law, [ECF No. 90-1] ¶¶ 37, 41 at p. 36–38. Plaintiffs claim Wight "misused the corporate forms of Group and Enterprises to mislead Plaintiffs as parties to and creditors under the Agreement." *Id.* ¶ 46 at p. 39. Plaintiffs assert Wight misled them by, among other things, representing Group had sufficient cash to consummate the transaction. *Id.* ¶¶ 150, 151 at p. 21.

These proposed findings and conclusions put at issue in this case the very point that Defendants raise in paragraph 26 of their Proposed Findings of Fact and Conclusions of Law.

---

[6] Although Illinois law governs the Agreement, *see* Agreement, [ECF No. 89-2], at 11, "Illinois applies the law of the state of incorporation for veil piercing claims, *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012).

Plaintiffs' advance knowledge of Group's lack of funds could impact whether Wight misled Plaintiffs in the way Plaintiffs claim he did. That in turn may impact Plaintiffs' ability to pierce the corporate veil.[7] Moreover, because Plaintiffs bear the burden of showing improper conduct to pierce the corporate veil, the Court does not consider Defendants' argument to amount to an affirmative defense. Rather, Defendants are attempting to negate Plaintiffs' required affirmative showing.

For all of these reasons, Plaintiffs' Motion *in Limine* No. 3 [ECF No. 92] is granted in part and denied in part.

## IV. CONCLUSION

For all of the reasons stated above, Plaintiffs' Motion *in Limine* No. 1 [ECF No. 89] is granted in part and denied in part, their Motion *in Limine* No. 2 [ECF No. 91] is denied, and their Motion *in Limine* No. 3 [ECF No. 92] is granted in part and denied in part.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 18, 2017

---

[7] The Court recognizes Plaintiffs contend additional improper conduct independently permits the piercing of the corporate veil in this case.

19